IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CHURCH BROTHERS, LLC, a California )
Limited Liability Company, )
)  05 10452 REK
    Plaintiff, )
) CASE NO.
v. )
)
THE ALPHAS COMPANY, INC., a )
corporation; THE ALPHAS COMPANY )
OF NEW YORK, INC, a corporation; )
JOHN (YANNI) S. ALPHAS, an )
individual; PETER S. ALPHAS, an )
individual, )
)
)
    Defendants )
)

**DECLARATION OF GINA TEGENKAMP IN SUPPORT OF PLAINTIFF'S
*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
OR, ALTERNATIVELY, FOR PRELIMINARY INJUNCTION;
EXHIBIT IN SUPPORT THEREOF**

I, GINA TEGENKAMP, declare as follows:

1. I currently am and during all times mentioned in this declaration have been a Sales Assistant for Plaintiff and moving party herein, CHURCH BROTHERS, LLC ("CB"). CB is a creditor of Defendant THE ALPHAS COMPANY, INC. ("TAC"), and its officers and directors JOHN (YANNI) S. ALPHAS ("JSA") and PETER S. ALPHAS ("PSA")(JSA and PSA are sometimes referred to as "the Individual Defendants")(TAC, JSA, and PSA are sometimes referred to collectively as "Defendants").

2. Plaintiff is a beneficiary of Defendants under the trust provisions of the Perishable Agricultural Commodities Act ("PACA") [7 U.S.C. §499e et seq.] and the full balance due to Plaintiff from Defendants qualifies for PACA trust protection.

3. I make this declaration in support of Plaintiff's Application for Temporary Restraining Order or, alternatively, for a Preliminary Injunction against Defendants to prevent Defendants' further dissipation of PACA trust assets and to compel immediate turnover of all such trust assets rightfully belonging to CB.

4. I am personally familiar with all matters that are the subject of this declaration and the facts set forth in this declaration are within my personal knowledge. If called upon as a witness, I would and could competently testify to all facts stated herein. As to those matters set forth on information and belief, I believe them to be true.

5. As Sales Assistant at CB, my responsibilities include conducting and monitoring sales of perishable agricultural commodities, including those sales that are the subject of this dispute, and handling collection of its accounts receivable for such sales. I have custody and control of CB's sales and accounts receivable records as they relate to Defendants and I am thoroughly familiar with the manner in which those records are compiled.

6. The sales and accounts receivable records, including invoices and billing statements, are made in the ordinary course of business and are made at or near the time of the occurrence of the event of which they are a record. These sales records are made either by me or under my direction and supervision by CB's employees whose duty it is to make such documents.

7. Plaintiff operates as a buyer and seller of perishable agricultural commodities. Defendants operate as buyers and sellers of perishable agricultural commodities. In that capacity, Defendants have purchased perishable agricultural commodities from Plaintiff (as well as from other produce wholesalers) for resale on the East Coast.

8. Plaintiff has been doing business with Defendants since November of 2004. The unpaid invoices that are the subject of this lawsuit are for sales transactions that occurred between on or about November 5, 2004 and December 18, 2004. In a series of

transactions during those dates, CB sold and shipped perishable agricultural commodities to Defendants at Defendants' request, for agreed-upon selling prices cumulatively totaling $76,150.20, consisting of $67,161.90 owed by the Defendants' Massachusetts branch and $8,988.30 owed by the Defendants' New York branch.

9. An invoice for each shipment was prepared and faxed to Defendants on or about the day of each transaction. *See*, true and correct copies of CB's invoices confirming these sales are attached to Neil Milburn's declaration as Group Exhibit 1.

10. A true and correct copy of CB's aged statement of account summarizing all outstanding invoices that are part of Group Exhibit 1 is attached to Neil Milburn's declaration as Exhibit 2.

11. Payment terms for Plaintiff's sales of produce to Defendants are 10 days from the invoice date. These 10-day payment terms are set forth on each invoice. *See again*, Group Exhibit 1. All invoices currently are delinquent.

12. The produce sold by CB to Defendants traveled in and in contemplation of interstate and/or foreign commerce between California, Massachusetts, and New York, among other states.

13. Because Defendants failed to timely pay for the produce that is the subject of this lawsuit, beginning in or about December 2004, I began placing regular telephone calls to Defendants to discuss the status of payment. *See also* Declaration of Neil J. Milburn filed simultaneously herewith. I made these telephone calls to Defendants on a weekly basis up until the last month or so. Usually, the telephone was answered by Defendant JSA. I would always introduce myself and ask her when payment would be made for the produce that TAC had purchased from Plaintiff.

14. In response, Defendant JSA always asked me to fax a statement to him, which I would do after getting the fax number from him. After sending a statement to JSA, I would call him again and ask him when we could expect payment, to which he

would either say that "he needed to talk to Neil [Milburn] first," or that "he would Federal Express a check" to me.

15. When I did not receive a check after two days (the normal time for Federal Express shipments to occur), I would call Defendants back and speak to JSA. When I would inform JSA that we did not receive a check, he usually said that he would place a check in the mail to me. Although we did receive a few checks, they usually were less than the invoice amount for which they were submitted. Also, no checks have been received in over a month.

16. In my last conversation with JSA, he told me that a check was "in the mail." However, despite this promise, no more checks have been received.

17. In addition to the daily telephone calls, I periodically faxed account statements to Defendants requesting payment, both when requested by Defendants and just as a reminder to Defendants of the past due amount. Defendants never disputed the amounts due.

18. As Sales Assistant for CB, it is my responsibility to make certain that CB complies with all requirements necessary to preserve its trust rights under PACA for all unpaid shipments of produce, including the shipments that are the subject of this dispute. CB is and during all times herein has been a PACA licensee, PACA license no. 20010840. In compliance with all statutory filing requirements, I made certain that each CB invoice set forth on its face the following statutory language necessary to preserve CB's PACA trust benefits:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

*See again* Group Exhibit 1 that confirms the quoted language appears on the face of each invoice sent to Defendants concerning the transactions that are the subject of this dispute.

19. As Sales Assistant for CB, I estimated that proceeds from CB's sale of produce to Defendants would have been received by CB when due. CB relies on the prompt payment of products sold to its customers to effectively and adequately manage its current payables and receivables schedules, monitor its cash flow, and make informed business decisions. *The failure of Defendants to preserve CB's PACA trust assets and to pay the amounts due has jeopardized and will continue to jeopardize the ability of CB to properly operate its business, to make informed business decisions, to purchase new product, and to pay some of its own suppliers.*

20. Accordingly, CB has been and will continue to be irreparably harmed if the PACA trust assets held by Defendants but which rightfully belong to CB are dissipated and if such assets, including inventory and accounts receivable, are not preserved for the benefit of and remitted to CB.

21. For the foregoing reasons, including (a) Defendants' admissions that the amount stated is immediately due and owing; (b) Defendants' repeated failure to remit promised payments; and, (c) Defendants' complete failure to remit even partial payments to reduce the debt, I believe that Defendants have unquestionably dissipated PACA trust assets and will continue to dissipate those assets absent immediate intervention by this Court.

///

///

///

22. For the reasons set forth above, I further believe that unless this Court issues the TRO requested by CB, it is highly probable that the PACA trust assets will be further dissipated and/or forever transferred beyond CB's reach before the motion is heard. If that happens, I believe that CB's chances of recovering its PACA trust assets will be remote at best. For these reasons, I respectfully urge this court to issue the requested relief.

I declare under penalty of perjury under the laws of the States of California and Massachusetts and the United States of America that the foregoing is true and correct.

Executed this 3 day of March 2005 in Salinas, California.

GINA TEGENKAMP