UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10452-REK

| | |
|---|---|
| CHURCH BROTHERS, LLC | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs | ) |
| | ) |
| THE ALPHAS COMPANY, INC. | ) |
| THE ALPHAS COMPANY OF NEW | ) |
| YORK, INC., JOHN S. ALPHAS, and | ) |
| PETER ALPHAS | ) |
| Defendants | ) |

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION
TO MODIFY ORDER OF MARCH 10, 2005

Now come the Defendants, and hereby move for modification of the Court's order entered in this matter, in an ex parte manner, on March 10, 2005.

As grounds therefore, Defendants state that the Order as entered precludes the Defendants from paying any bills, as, for example, they, and their banks, are restrained from "otherwise disposing of corporate assets, books or funds" (Paragraph A on Page 2 of the Order), even if the Defendants deposit into court the $ 76,150.20 in damages which the Plaintiff seeks. The order as written will effectively put the company out of business, so the balancing of hardships clearly demonstrates that no injunction should enter. Finally, there is no likelihood that the Plaintiff will win all $ 76,150 it seeks.

1

**FACTUAL BACKGROUND**

This is a collections action. Plaintiff is seeking to be paid for produce which it sold to the corporate defendants. The Defendants have sought credit for defective produce. See affidavit of John S. Alphas attached. Plaintiff has taken a pre-emptive strike, freezing all of the Defendants' bank accounts, in a dispute over the quality of the vegetables sold by Plaintiff. The Order as entered prevents the Defendants from making any payments to anyone, even if the Defendants have sufficient funds to pay the full amount of the claim. No company can stay in business with its funds completely frozen. Furthermore, the Plaintiff has chosen to take the highly unusual route of this court suit, instead of a filing with the regional PACA office, where most disputes of this nature are resolved.

As disclosed in the affidavit of John Alphas, and the documents attached to that affidavit, contrary to the Plaintiff's assertions, Alphas has in fact complained about the quality of the involved produce in a timely fashion, and has USDA inspection reports for most of the involved lots. However, not all lots sold by Plaintiff to Alphas had quality issues. As revealed by Alphas, but not by Plaintiff, Alphas has paid for the "good" shipments, and, in many cases, for shipments where Plaintiff issued credits because of quality issues. Only the "disputed" shipments are the subject of this litigation.

**BALANCING OF HARDSHIPS**

Plaintiff argues that it might be irreparably harmed if its claim to trust assets is not protected. Plaintiff might lose $ 76,000 (actually, $ 46,851 now that a check has been

2

sent by Federal Express to them). However, if all of the Defendants' assets continue to be frozen, the Defendants will be out of business. If they do not pay other shippers/growers because the accounts are frozen, not only will the Defendants not be able to obtain additional produce to sell, but also all of the other growers and shippers will bring suit, claiming their interest in the trust needs to be protected as well. Plaintiff's fear will become a self-fulfilling prophecy.

Balancing the potential loss to the Plaintiff, $ 46,851 or $ 76,000, against the harm to the Defendants, going out of business, obviously tilts toward the Defendants. Add the harm to the broader community of other growers and shippers, and other creditors, and the calculus clearly shows that the injunction should be dissolved.

**IRREPARABLE HARM**

As disclosed in John Alphas' affidavit, the Company currently has more than sufficient funds in its one account with Danvers Savings Bank to pay all of Plaintiff's claim. There is no need to tie up all, or even any, of the Defendant's accounts to assure that the Plaintiff will be able to recover on any judgment it might win in this matter, particularly where the injunction will assure that the Defendants will be put out of business.

Plaintiffs base their argument that Defendants are in financial trouble, and therefore Plaintiffs are at financial risk, based on an alleged embezzlement, which occurred four (4) months ago, and the sale of an asset which occurred almost three (3) months ago. Yet, as John Alphas' affidavit discloses, the company has enough cash in

3

one account to more than pay for the full $ 76,000 amount of Plaintiff's claim, well beyond the amount of $ 46,851 which is actually in dispute.

## SUCCESS ON THE MERITS

As indicated above, Defendants have paid for most of the shipments from the Plaintiff. Documentation from the USDA is available to document the quality issues for every one of the invoices involved in this case, yet the Plaintiff has brought suit alleging that it is owed the full amount of each and every invoice.

As disclosed in the printout labeled "Church Bros. Purchase History," Alphas paid for 10 shipments. Of those 10, five, or 50% of the shipments, involved some adjustment for poor quality, about which Church and Alphas were able to come to an agreement. The adjustments totaled almost $ 24,000 on invoices totaling $ 68,000. In other words, the adjustments totaled more than 1/3 of the total invoices. The invoices which were the subject of adjustments totaled $ 43,723.50. The agreed adjustments of $ 23,946 represented almost 55% of the total initial billing.

Using those same figures, the invoices in dispute here initially revealed a total of $ 80,597.90. An adjustment of 1/3 would indicate that Alphas would owe $ 53,731.93, of which Alphas already paid $ 4,447.70, leaving $ 49,284. If, however, one were to use the figures which applied to disputed invoices, Alphas will owe 45% of the initial invoice figure, which would be $ 36,269.05, of which Alphas already paid $ 4,447.70, leaving a probable amount owed of $ 31,821.

4

The point of the above exercise is to demonstrate that, by claiming that it owes only $ 33,746.90 on the invoices in dispute, Alphas' position is within the range which the prior dealings between the two parties shows is reasonable. Alphas has not been claiming adjustments out of proportion to what it could reasonably expect to have obtained.

Furthermore, the documents produced by Alphas, the faxes sent long before this matter was placed in litigation, belie Plaintiff's claim that Alphas never contested the quality of the involved produce.

**SUMMARY**

The potential harm to Defendants, should the injunction remain in effect, i.e., going out of business, clearly outweighs the potential harm to the Plaintiff, the loss of either $ 46,851 or $ 76,000, which is not an amount which Plaintiff ultimately will not obtain as a result of this litigation. The Defendants have sufficient liquid assets to pay a judgment, especially one in a reasonable amount, but even the inflated amount sought by Plaintiff.

Plaintiff has requested, and initially obtained, a form of relief that is not only unnecessary, but also unnecessarily harmful. The injunction should be dissolved, so that Defendants can continue in business, so that not only the Plaintiffs can be paid an amount to which they are truly due, but all other creditors can be paid, and the Defendants earn a profit.

If the Court should determine that some form of security is required, Defendant could be required to pay the disputed amount, $ 46,851 into court.

Respectfully submitted
The Alphas Company, Inc.
By its attorneys


_____
Scott L. Machanic   BBO # 311120
Cunningham, Machanic, Cetlin,
   Johnson & Harney, LLP
220 N. Main Street
Natick, MA 01760
(508) 651-7524

235222